UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MPI INDUSTRIES LLC, <br> MPI TOWER INDUSTRIES <br> LIMITED LIABILITY COMPANY, <br> MPI INDUSTRIES STAFFING LLC, <br> DAVID RISTICK, AND <br> SUSIE RISTICK, <br>       *plaintiffs,* <br><br> versus <br><br> REPUBLIC BUSINESS CREDIT, LLC, <br>       *defendant.* | Civil No. <br><br> Section , Division <br><br> District Judge <br><br> Magistrate Judge |

**VERIFIED COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND FOR DAMAGES**

To support their *Complaint for Injunctive and Declaratory Relief and for Damages* ("*Complaint*"), MPI Industries, LLC ("MPI"), MPI Tower Industries Limited Liability Company, MPI Industries Staffing LLC, David Ristick, and Susie Ristick make the following allegations of law and fact:

**Nature of the action.**

1. Defendant Republic Business Credit, LLC ("Republic") is a commercial factor; it makes its money by purchasing (and later collecting) other companies' receivables at a discount, and by charging fees. MPI is a telecommunications construction/infrastructure company which uses Republic's factoring to stabilize its cash flow. Much of MPI's operating budget flows through this arrangement; Republic is even responsible for directly paying MPI's primary lender and all its subcontractors.

2. In May 2016, Republic stopped performing under the parties' written agreement(s). This nonperformance not only deprives MPI of operating revenue, it puts MPI in

1

danger of default with its primary lender and threatens MPI's hard-earned business relationships.

3.   Republic's nonperformance is not warranted under any of the parties' written agreements. Commercially unreasonable, Republic's refusals suggest an intent to force MPI into default under the factoring agreement.

4.   If left unchecked, Republic's nonperformance will force MPI to suspend or altogether cease its operations.

5.   MPI asks the Court to immediately compel Republic to perform in the short term while it asks the Court for a declaration of its rights under the parties' factoring contract and for the damages it suffered from Republic's nonperformance.

6.   The necessity of an injunction to avoid further and more permanent injury to MPI's relationship-fueled business cannot be overstated.

### The parties.

7.   Plaintiff **MPI** is a New Jersey limited liability company; all its members are citizens of the State of New Jersey.

8.   Plaintiff **MPI Tower Industries Limited Liability Company** is a New Jersey limited liability company; all its members are citizens of the State of New Jersey.

9.   Plaintiff **MPI Industries Staffing LLC** is a New Jersey limited liability company; all its members are citizens of the State of New Jersey.

10.   Plaintiff **David Ristick** is a natural person of the full age of majority; he is a citizen of the State of New Jersey.

11.   Plaintiff **Susie Ristick** is a natural person of the full age of majority; she is a citizen of the State of New Jersey.

12. The plaintiffs identified in Paragraphs 8-11 of the *Complaint* have each executed a personal guaranty of MPI's obligations to Republic. They are therefore properly before the Court as Louisiana sureties who enjoy all the rights and defenses of MPI other than bankruptcy and incapacity. La. Civ. Code art. 3046.

13. **Republic** is a Louisiana limited liability company; upon information and belief, its members are citizens of the State of Illinois and the State of Louisiana.

### Subject matter jurisdiction.

14. Under 28 U.S.C. § 1332, this Court may exercise original jurisdiction over the subject matter of MPI's civil claims, where:

   a. the plaintiff (MPI) is deemed to be a citizen of the State of New Jersey because all its members are natural persons who are New Jersey citizens;

   b. no defendant is, or is deemed for diversity jurisdiction purposes, a citizen of the State of New Jersey;

   c. the defendant is deemed to be a citizen of the State of Louisiana and the State of Illinois because it has natural person members who are citizens of those states; and

   d. the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

### Personal jurisdiction.

15. As a practical matter, the parties have impliedly consented to this Court's exercise of personal jurisdiction by the forum selection clause included in the contracts at issue.[2]

16. As a Constitutional matter, the Court may exercise general *in personam* jurisdiction because Republic's contacts with Louisiana are "so continuous and systematic as to

---

[2] **EXHIBIT A:** November 3, 2011 *Amended and Restated Agreement for Purchase and Sale* at ¶ 4.

render [it] essentially at home in the forum State." *Namer v. Bank of Am., N.A.*, 2016 WL 1089352, *3 (E.D.La. 2016), *quoting Daimler AG v. Bauman*, 134 S.Ct. 746, 754, 187 L.Ed.2d 624 (2014).

## Venue

17. The *Factoring Agreement* contains the following forum selection clause: "The Chosen Forum shall mean the United States District Court for the Eastern District of Louisiana or any court of the State of Louisiana located in the Civil District Court for the Parish of Orleans."

18. Venue is also proper in this judicial district because this is a district where the defendant (Republic) is subject to the Court's exercise of personal jurisdiction. 28 U.S.C. § 1391(b)(3).

## Factual background.

### *MPI and Republic: their businesses.*

19. **MPI** was founded by David Ristick in 1997 as a metal recycling agency for the telecommunications (telecom) industry; in 2007, MPI shifted its focus entirely to cell site development and fiber optics, landing its first major master service agreement with Acatel Lucent (now Nokia).

20. Mr. Ristick has grown MPI from 2007 revenues of $1.4 million USD to over $20 million USD in 2015; $36 million USD is forecast for 2016.

21. Having grown over 2,500% in 9 years, MPI has served nearly every major telecommunications company in North America; MPI's service has been commended by the chairman of Nokia.

22. MPI constructed the first communications tower for the Alcatel/Sprint Vision PCS network in 2013. There are now over 16,500 of these towers.

23. MPI's placement of over 200 full time internal managers across multiple territories demonstrates how relationship-driven its business has become.

24. To date, MPI has developed over 5,000 cell sites. It has laid over 100,000 miles of fiber optic cable.

25. Among MPI's clients are Google, T- Mobile, AT&T, Sprint, Crown Castle, Verizon, American Tower, Black & Veatch, Raytheon, Ericsson, Nokia, Alacatel-Lucent and Mastec Network Solutions.

26. **Republic** is a financial entity, commonly known as a factor. Factors buy its client companies' accounts receivable, paying a percentage of each account to the client. The factoring relationship allows the client to better predict its cash flow while the factor profits by keeping a negotiated percentage of the receivable as its fee.

### *The Factoring Agreement.*

27. Construction professionals take advantage of factoring to smooth out revenue and better predict cash flow available for operating expenses.

28. MPI has used factoring for these purposes since 2009, then with Allied Affiliated Funding, L.P. ("Allied").

29. Republic purchased Allied's assets in 2011, including the *Allied Factoring Agreement* involving MPI.

30.  In November 2011, Republic and MPI amended and restated[3] the *Allied Factoring Agreement* into the *Factoring Agreement* at issue now; they've amended it three times since: October 2012,[4] August 2014,[5] and September 2014.[6]

31.  The table below outlines the evolution of the *Factoring Agreement*'s key terms:

| date of amendment | advance rate (% of account face value) | funding fee (% of advance); minimum fee | service fee (% of face value) for accounts aged <60 days | Additional service fee (% of face value) for accounts aged >60 days |
|---|---|---|---|---|
| 11/2011[7] | 85 | 3.5; 6.75 | 1.625 | .25 |
| 10/2012[8] | 87 | n/c | n/c | n/c |
| 09/2014[9] | *92* | *1.5; 4.75* | 1.15 | .20 |
| 6 months after 09/2014[10] | n/c | n/c | 1.00 | .17 |
| 1 year after 09/2014[11] | n/c | n/c | *.85* | *.15* |

***The Letters of Direction.***

32.  Since 2015, Republic has paid MPI's subcontractors directly and on MPI's behalf, using money it owes to MPI under their *Factoring Agreement*.

33.  During that time, the subcontractors' payment arrangement has been governed by *Letters of Direction* which MPI routinely gives Republic.

---

[3] **EXHIBIT A.**

[4] **EXHIBIT B:** October 2, 2012 *First Amendment to the Agreement for Purchase and Sale.*

[5] **EXHIBIT C:** August 18, 2014 *Second Amendment to the Amended and Restated Agreement for Purchase and Sale.*

[6] **EXHIBIT D:** September 9, 2014 *Third Amendment to the Amended and Restated Agreement for Purchase and Sale.*

**EXHIBITS A-D** will be collectively referenced as the "*Factoring Agreement*" in this *Complaint*.

[7] **EXHIBIT A.**

[8] **EXHIBIT B.**

[9] **EXHIBIT D.**

[10] **EXHIBIT D.**

[11] **EXHIBIT D.**

34.     By way of illustration only, recent *Letters of Direction* are included as **EXHIBIT E,**
        *IN GLOBO.*

### DECEMBER 2015:
### The Intercreditor Agreement.

35.     MPI obtained additional operation and growth funding from TCA Global Credit
        Master Fund, LP ("TCA") in late 2015.

36.     MPI structured its TCA relationship to preserve Republic's position as MPI's first
        secured creditor with a tri-partite *Intercreditor Agreement.*[12]

37.     Under the *Intercreditor Agreement*, beginning in May 2016, MPI's loan payments
        to TCA were to be made directly by Republic (using money Republic would other-
        wise distribute to MPI under their *Factoring Agreement*), and Republic would main-
        tain its first lien priority as MPI's secured creditor.

38.     As a party to the contract, Republic at all times knew of the *Intercreditor Agree-
        ment*'s terms.

### APRIL 2016:
### Republic stops performing
### under the Factoring Agreement.

39.     During the first 4 months of 2016, Republic began withholding some of the pay-
        ments it owed MPI following the sale of MPI's receivables.

40.     Republic offered no principled explanation why the *Factoring Agreement* permitted
        it to withhold funds, which it knew MPI needed for operations, including payroll.

41.     Republic did not pay MPI at all in May or June 2016.

---

[12] **EXHIBIT F:** December 23, 2015 *Intercreditor Agreement.*

*APRIL/MAY 2016:*
*Republic admits overcharging*
*service fees; refuses to refund.*

42.     By April and May 2016 emails, Republic Operations Manager Danika Louis admitted that Republic overcharged service fees due and owing under the *Factoring Agreement* and that MPI was due and owed a rebate.[13]

43.     Rather than issuing the rebate Ms. Louis described, Republic continues to withhold the sum even after demand.

*MAY/JUNE 2016:*
*Republic refuses to pay TCA*

44.     Under the *Intercreditor Agreement*, Republic was required to pay TCA directly on MPI's behalf.

45.     But Republic refused to do so in May 2016 and June 2016, despite its admission that it is holding funds earmarked for the TCA payment.[14]

*MAY/JUNE 2016:*
*Republic's refusal to pay MPI's subcontractors*
*under the Letters of Direction.*

46.     Not only is Republic holding money it owes to MPI and TCA, it is also holding over a quarter of a million dollars it should have paid to MPI's subcontractors.

47.     The sum ($284,094.16)[15] represents funds to which Republic could never become entitled.

---

[13] **EXHIBIT G:** April and May 2016 email correspondence between Republic and MPI.

[15] **EXHIBIT E.**

[14] *Id.*

*JUNE 1, 2016:*
*Republic's purported default notice*
*under the Factoring Agreement.*

48.     On June 1, 2016, Republic sent MPI a letter entitled *Notice of Default, Demand and Acceleration of Obligations* ("*Default Notice*").[16]

49.     In the *Default Notice*, Republic concludes that its concern with MPI's recent projections and cash flow reporting, and credit memoranda issued by MPI,[17] reveal that MPI is insolvent, and that MPI has therefore defaulted under § 7.1(b) of the *Factoring Agreement*.

50.     But § 7.1(b) refers to "an Insolvency Event" which is defined in the *Factoring Agreement* as either actual insolvency or bankruptcy/receivership.

51.     Republic misapprehends "insolvency." Because the *Factoring Agreement* doesn't provide its own insolvency definition, Louisiana law (which the parties agreed governs their *Factoring Agreement*), specifically its Civil Code, supplies the rule.

52.     A party to a Louisiana contract is insolvent "when the total of his liabilities exceeds the total of his fairly appraised assets." LA. CIV. CODE art. 2037.

53.     Republic's mere appreciation of MPI's solvency *vel non* will not suffice because an obligor's insolvency must be judicially declared in these situations. LA. CIV. CODE art. 1782, comment (d); Saul Litvinoff and Ronald Scalise, 5 LA. CIV. L. TREATISE, LAW OF OBLIGATIONS § 6.10 (2d ed.).

---

[16] **EXHIBIT H:** June 1, 2016 *Notice of Default, Demand and Acceleration of Obligations*.

[17] **EXHIBITS I, J.** Republic was aware of the credit memorandum [Exhibit I], which was the result of a litigation settlement [Exhibit J] from California project where MPI's client failed to secure proper public funding; neither the shortcoming nor MPI's settlement of the issue are unusual in the industry and they don't suggest MPI's insolvency.

54.  Under Louisiana law, where Republic seeks to use a contract provision ("insolvency") to deprive MPI of its right to perform within a specified period (term), it cannot "spot check" for financial difficulty and declare some momentary instant of insolvency. "Insolvency in fact, or momentary imbalance of accounts, is not enough, as the obligor's insolvency must be one judicially declared." *Id*; see also *L & L Oil Co., Inc. v. Hugh Mac Towing Corp.*, 859 F.Supp. 1002, 1007 (E.D.La. 1994).

55.  Not only is Republic's appreciation of Louisiana insolvency incorrect, MPI simply isn't insolvent. MPI has shared with Republic its estimated receivables of around $2,200,000, and a summer projection of $3,000,000-$3,500,000 of anticipated work.

### JUNE 1, 2016:
### *Republic's attempt to excuse itself from performing under the Intercreditor Agreement.*

56.  In Republic's June 1, 2016 *Default Notice*, it alleges that MPI has breached the parties' *Intercreditor Agreement* with MPI's lender (TCA) by vaguely intimating that MPI might not be utilizing the loan proceeds as it agreed.[18]

---

[18] **EXHIBIT H, p. 2, ¶ 2. "Further, RBC has reason to believe that MPI Industries is in breach of that certain Intercreditor Agreement** dated December 23, 2015 by and among RBC, TCA Global Credit Master Fund, LP ("TCA") and MPI Industries (the "Intercreditor Agreement"). Pursuant to the Intercreditor Agreement, RBC conditionally agreed and consented to TCA's receipt of scheduled amortized payments of principal and interest, as well as certain other payments (the "TCA Payments").Payment of the TCA **Payments are permitted only if all proceeds of the Loan made by** TCA were utilized in conformity with the sources and uses statement as set forth in Exhibit 2 of the **Intercreditor Agreement.** Further, the payment of the TCA Payments is permitted only in the event no uncured default is existing under the Purchase Agreement. As detailed herein, numerous Events of Default under the Purchase Agreement exist and therefore no payments are permitted to be made to TCA." (**emphasis added** and emphasis added)

57. The *Default Notice* also concludes that, because it has alleged (insolvency) *Factoring Agreement* defaults which it contends have not been cured, it is excused from performing under the *Intercreditor Agreement*.

58. Republic's position appears to be that the *Factoring Agreement* insolvency allegations against MPI (defaults it noticed for the first time in June 2016) retroactively excuse Republic from performing under the *Intercreditor Agreement* in May 2016.

59. Republic's refusal to pay (money Republic admits holding for that purpose) TCA under the *Intercreditor Agreement* in May ($211,000) and June 2016 ($220,000) threatens to put MPI in default as to TCA, through no fault of its own.

### JUNE 1, 2016:
### *Republic broadcasts its unverified allegations*
### *to MPI's primary creditor, TCA.*

60. Inexplicably, Republic's attorney also overnighted its *Default Notice* to TCA. Presumably, Republic had already communicated to TCA why it didn't make the payment on MPI's behalf in May 2016. It is unclear why Republic felt justified in providing TCA with its MPI insolvency conclusions and veiled references to MPI's misuse of the TCA loan proceeds.[19]

### JUNE 14, 2016: EMERGENCY LOAN

61. Satisfied that Republic would not be performing under their various written agreements, on June 14, 2016 MPI was forced to seek (and it obtained) alternate, emergency funding to continue operating.

---

[19] See Note 18, *supra*.

## COUNT ONE:
## INJUNCTIVE RELIEF

62.   MPI repeats and re-alleges the allegations made in ¶¶ 1-61 as if fully set forth herein.

63.   Since April 2016, Republic has:

    a.   completely cut MPI off from the funds it uses to operate and grow, which it was required to advance under the *Factoring Agreement*, funds Republic acknowledges it has and has earmarked for that purpose;

    b.   admitted it overcharged MPI service fees in violation of the *Factoring Agreement*, but refused to correct its mistake;

    c.   refused to pay MPI's largest creditor, TCA, May and June 2016 loan installments, despite its acknowledgement of funds being held for that purpose, and despite its obligation to do so under the *Intercreditor Agreement*;

    d.   refused to pay MPI's subcontractors sums amounting to $284,094.16, which it was required to do (and previously did) under the *Letters of Direction*; and

    e.   declared to MPI's largest creditor (TCA) that MPI is insolvent and that it may have misused the proceeds TCA loaned MPI.

64.   Because of Republic's recent actions, MPI finds itself:

    a.   without funds to operate (and grow, which MPI was still doing);

    b.   unable to make payroll;

    c.   having been overcharged service fees, which Republic admits but refuses to correct;

    d.   in default as to TCA, its largest creditor, for Republic's failure to make May and June 2016 payments;

    e.   in substantial arrears ($284,094.16) to its subcontractors, which arrears will likely result in liens on MPI projects;

    f.   losing goodwill in its industry and with those with whom it does business; and

    g.   facing Republic's termination demands.

65.   MPI's existence is threatened by Republic's recent treatment of the parties' relationship(s); money damages will not alleviate the potential harm MPI faces.

66. The relief sought, an order that Republic perform (and cure its nonperformance) under the *Letters of Direction*, the *Factoring Agreement*, and the *Intercreditor Agreement*, will not harm Republic at all, let alone excessively.

67. Third parties' interests (particularly MPI's subcontractors and its largest creditor, TCA) can be be *materially advanced* by the Court's treatment of MPI's injunction request.

68. Given the application of Louisiana contract law to this dispute, MPI is likely to succeed on the merits. Not only is Republic's nonperformance improperly premised upon its snapshot appreciation of MPI's "insolvency," but even if the Court indulges Republic's default argument(s), Republic cannot prevail where it seeks to dissolve the *Factoring Agreement* which MPI has substantially (if not fully) performed, and where Republic cannot show how the (nonexistent or purely technical) default(s) it cites substantially impair(s) its interest. LA. CIV. CODE art. 2014.

69. The Court should issue, and MPI will separately move for:

    a. a temporary restraining order affirmatively requiring Republic to immediately perform without dispute for May and June 2016 under the parties' agreements outlined in ¶ 63(a)-(e), above; and

    b. a preliminary injunction affirmatively requiring Republic to continue the performance outlined in ¶ 63(a)-(d), until the parties can present their respective cases on the merits.

## COUNT TWO:
## DECLARATORY RELIEF

70. MPI repeats and re-alleges the allegations made in ¶¶ 1-69 as if fully set forth herein.

71.     MPI seeks this Court's declaration of the parties' rights and legal relationship(s) under the various agreements at play, namely the *Factoring Agreement*, the *Letters of Direction*, and the *Intercreditor Agreement*.

## COUNT THREE:
## SPECIFIC PERFORMANCE

72.     MPI repeats and re-alleges the allegations made in ¶¶ 1-71 as if fully set forth herein.

73.     Republic has a contractual "duty to do," and its failure on multiple fronts gives rise to MPI's action for specific performance under Article 1986 of the Louisiana Civil Code.

74.     The Court may, in its discretion, order that Republic release all funds which are wrongfully retained by Republic, causing them to be delivered to the entity contemplated by the parties' contracts.

## COUNT FOUR:
## BREACH OF CONTRACT; BAD FAITH

75.     MPI repeats and re-alleges the allegations made in ¶¶ 1-74 as if fully set forth herein.

76.     The *Factoring Agreement*, the *Letters of Direction*, and the *Intercreditor Agreement* are each a valid and enforceable contract.

77.     MPI has always performed under these contracts.

78.     Republic has breached the *Factoring Agreement* by improperly withholding funds destined for MPI, and by overcharging MPI service fees and failing to correct its oversight. It has breached the *Letters of Direction* by repeatedly refusing to pay MPI's subcontractors as it has always done. Republic has also breached the *Intercreditor Agreement* by refusing to pay MPI's largest creditor (TCA) the MPI funds it has earmarked for May and June 2016 loan repayment.

14

79.     Republic's continued and ongoing breaches, and all associated delays with Republic's performance, have already and will continue to cause substantial damage to MPI.

80.     Because Republic's breaches cannot be squared with either reasonableness or good faith, Civil Code duties it owes in performing its Louisiana contracts. Because its behavior evinces motives of interest or ill will, its bad faith breaches expose it to liability for all the damages, foreseeable or not, that are a direct consequence of its failure(s) to perform. La. Civ. Code art. 1997.

## COUNT FIVE:
## DELAY DAMAGES

81.     MPI repeats and re-alleges the allegations made in ¶¶ 1-80 as if fully set forth herein. At its core, Republic's obligation(s) are to pay MPI (or third parties) an agreed-upon sum of money in an agreed-upon manner so that MPI can operate and grow.

82.     Those objectives, and Republic's failure to achieve them, entitles MPI to damages for delay in performance measured by the interest on the sum from the time it was due. La. Civ. Code art. 2000.

83.     Absent agreement, Louisiana statute fixes that rate of interest. La. Rev. Stat. § 9:3500.

84.     MPI is entitled to these damages without having to prove any loss. La. Civ. Code art. 2000.

85.     Where the parties' written contract, as in the *Intercreditor Agreement*, includes attorney's fees, MPI is entitled to such fees due to Republic's delay. *Id.*

## COUNT SIX:
## CONVERSION

86.    MPI repeats and re-alleges the allegations made in ¶¶ 1-85 as if fully set forth herein.

87.    Because MPI has a contractual right to the funds Republic is withholding, because Republic's withholding constitutes misuse of those funds, because that misuse is inconsistent with MPI's right to those funds, and because Republic's retention of the funds constitutes a wrongful taking, Republic is liable *ex delictu* for conversion. LA. CIV. CODE art. 2315.

88.    Additionally, Republic has converted funds due and owed to third parties, namely TCA and MPI's subcontractors.

## COUNT SEVEN:
## STATUTORY UNFAIR TRADE PRACTICES.

89.    MPI repeats and re-alleges the allegations made in ¶¶ 1-88 as if fully set forth herein.

90.    Under the *Factoring Agreement*, Republic's provision of agreed-upon revenue from its purchased receivables permits MPI to operate and grow.

91.    Republic's relationship as MPI's factor vests it with a great deal of power not only over MPI's profitability and efficiency, but over its very existence.

92.    Republic knows that MPI has since 2009 performed under factoring agreements, including the parties' 2011 *Factoring Agreement*, as amended.

93.    Republic knows that MPI's clients are national and international telecommunications leaders (Google, T- Mobile, AT&T, etc.) who pay, and who pay on time.

94.    Republic employs the most robust receivables verification in the factoring industry to minimize its risk; the *Factoring Agreement* assigns nearly all risk to MPI.

95. Republic must have deemed itself secure over the past few years because it saw fit to reduce its fees while increasing the advance rate it paid MPI.

96. As recently as December 2015, Republic must have deemed itself secure because it took on extra duties in the *Intercreditor Agreement*.

97. At some point, and for some reason, between December 2015 and April 2016, Republic decided it was no longer interested in performing under the *Factoring Agreement*, the *Letters of Direction*, and the *Intercreditor Agreement*.

98. Republic's disinterest is not a sufficient basis for its recent behavior; it is legally obliged to continue performing.

99. Republic knows or should know that its nonperformance causes more than mere growth (see ¶¶ 19-25, above) interruption for MPI; it will likely force MPI to suspend or altogether cease operations.

100. Although none of Republic's nonperformance is contractually justified or excusable, certain of its decisions belie an intent that can only be described as "wrong": acknowledging its overcharging of fees but failing to correct; refusing for months to pay MPI's subcontractors and TCA; and its decision to overnight TCA a letter vaguely accusing MPI of misusing the loan proceeds it received from TCA.

101. MPI submits that there is a "great deal of daylight" between a standard contractual dispute and Republic's egregious behavior described in this *Complaint*. Republic's contract-related breaches feature deceptive, manipulative, and unethical undertones.

102. The proof will show that Republic's default allegations are mere pretext and that its real motive is not to protect itself, but rather to force MPI into breaching the agreement to stay alive or acquiescing to early termination. Either scenario is profitable

for Republic, who has already made demand for the *Factoring Agreement*'s $750,000 early termination fees. **EXHIBIT H.**

103. Accordingly, MPI pleads Louisiana's Unfair Trade Practices and Consumer Protection Act [LA. REV. STAT. § 51:4101, *et seq.*] and will, contemporaneously with filing this *Complaint*, notify Louisiana's Attorney General of its intentions.

## COUNT EIGHT:
## UNJUST ENRICHMENT

104. MPI repeats and re-alleges the allegations made in ¶¶ 1-103 as if fully set forth herein.

105. Republic has been enriched by its misdeeds against MPI.

106. MPI has suffered a corresponding impoverishment.

107. The funds with which Republic enriches itself are the same funds without which MPI finds itself impoverished.

108. No justification for this state of affairs exists.

109. If the Court finds that MPI is with no legal remedy, Louisiana's Civil Code permits an order disgorging funds from Republic, restoring MPI's funds, and transferring funds owed to third parties.

## COUNT NINE:
## PAYMENT OF A THING NOT OWED

110. MPI repeats and re-alleges the allegations made in ¶¶ 1-109 as if fully set forth herein.

111. "A thing is not owed when it is paid or delivered for the discharge of an obligation that does not exist." LA. CIV. CODE art. 2300.

112. Republic has acknowledged that it has overcharged MPI service fees.

113. "A person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it." La. Civ. Code art. 2299.

114. "A person who in bad faith received a payment or a thing not owed to him is bound to restore it with its fruits and products." La. Civ. Code art. 2303.

115. Besides the sums Republic has overcharged MPI, Republic should pay interest on those sums.

## COUNT TEN:
## ACCOUNTING

116. MPI repeats and re-alleges the allegations made in ¶¶ 1-115 as if fully set forth herein.

117. In order to properly effect any relief the Court may fashion, the various obligations owed by the parties must be quantified.

118. MPI prays for an order requiring Republic to account for the funds in its possession, and any which have been in its possession during its time of nonperformance, which MPI believes may even predate April 2016, particularly with Republic's overcharging MPI service fees.

119. "An accounting is a form of equitable relief that a court may grant in aid of judgment." *Roberts v. Am. Bank & Trust Co., Inc.*, 835 F.Supp.2d 183, 205 (E.D. La. 2011).

**WHEREFORE**, the plaintiffs respectfully request that the Clerk of Court assign this matter a cause name and number, assigning it to a division and section, and that after all delays and proceedings, this Honorable Court render judgment:

a. ordering Republic to immediately (while curing any arrearages):

-resume its practice of paying MPI's subcontractors under the *Letters of Direction*;

-pay TCA under the *Intercreditor Agreement*;
-resume its normal distributions to MPI under the *Factoring Agreement*; and

-refund MPI the service fees it has admitted overcharging MPI.

b. ordering Republic to provide a complete accounting of all monies previously advanced and those due to MPI, including all fees taken by Republic;

c. ordering Republic to pay MPI all damages (whether contractual, quasi-contractual, or delictual), statutory penalties, contractual or statutory attorney's fees, and/or costs to which MPI is entitled, all premises considered; and

d. ordering all other relief, whether legal, equitable, or customary, this Court deems just and proper.

Dated: June 17, 2016.                    Respectfully submitted,

_____
Andrew T. Lilly (La. 32559)
Lilly, PLLC
715 Girod Street, Suite 200
New Orleans, Louisiana 70115
t: (504) 812-6388
f: (504) 539-4180
e: andrew@atlpllc.com

David P. Wadyka (*pro hac vice motion forthcoming*)
DiFrancesco, Bateman, Kunzman, Davis, Lehrer & Flaum, P.C.
15 Mountain Blvd.
Warren, New Jersey 07059
t: (908) 757-7800 ext.226
f: (908) 757-8039
e: dwadyka@newjerseylaw.net

***Attorneys for plaintiffs***

**VERIFICATION**

COUNTY OF GLOUCESTER,
STATE OF NEW JERSEY.

BEFORE ME, the undersigned authority, **David Ristick** personally came and appeared, and who upon being duly sworn, did depose and state:

1.  I am **David Ristick** and I am a natural person of the full age of majority;

2.  I am appearing individually and in my capacity as President, CEO, and Managing Member of MPI Industries LLC ("MPI"), and as managing member of MPI Tower Industries Limited Liability Company, and as managing member of MPI Industries Staffing LLC;

3.  In both capacities, I have become acquainted with MPI's dispute with its factor, Republic Business Credit LLC;

4.   I have read the *Verified Complaint for Injunctive and Declaratory Relief and for Damages* and, based on my personal knowledge and belief, its allegations are true;

5.  I make this declaration of my own free will and under penalty of perjury, certifying the foregoing as true and correct to the best of my knowledge.

Executed on June 17, 2016.

DAVID RISTICK

Sworn to and subscribed before me,
this 17th day of June, 2016:

[seal]   JAMEEL K. ALI
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES DEC. 22, 2020

JAMEEL ALI

Jameel Ali, Notary Public

## VERIFICATION

COUNTY OF GLOUCESTER,
STATE OF NEW JERSEY.

BEFORE ME, the undersigned authority, **Susie Ristick** personally came and appeared,

and who upon being duly sworn, did depose and state:

1.  I am **Susie Ristick** and I am a natural person of the full age of majority;

2.  I am appearing individually, only as guarantor of MPI Industries LLC's obligations;

3.  In this capacity, I have become acquainted with MPI's dispute with its factor, Republic Business Credit LLC;

4.  I have read the *Verified Complaint for Injunctive and Declaratory Relief and for Damages* and, based on my personal knowledge and belief, its allegations are true;

5.  I make this declaration of my own free will and under penalty of perjury, certifying the foregoing as true and correct to the best of my knowledge.

Executed on June 17, 2016.

_____
**SUSIE RISTICK**

Sworn to and subscribed before me,
this 17th day of June, 2016:

[seal]       **JAMEEL K. ALI**
          **NOTARY PUBLIC OF NEW JERSEY**
          **MY COMMISSION EXPIRES DEC. 22, 2020**

JAMEEL ALI

_____
Jameel Ali, Notary Public